David J. Noonan (55966)
    dnoonan@knlh.com
Lauren E. Butz (246668)
    lbutz@knlh.com
KIRBY NOONAN LANCE & HOGE LLP
350 Tenth Avenue, Suite 1300
San Diego, CA 92101-8700
Telephone: (619) 231-8666
Facsimile: (619) 231-9593

Mitchell A. Kramer *(Pro Hac Vice)*
    mkramer@kramerandkramer.com
KRAMER & KRAMER, LLP
1077 Rydal Road, Suite 100
Rydal, PA 19046
Telephone: (215) 887-9030
Facsimile (215) 887-9240

Barbara H. Kramer (P*ro Hac Vice)*
    bkramer@kramerandkramer.com
KRAMER & KRAMER, LLP
24 Frank Lloyd Wright, Lobby D
Ann Arbor, Michigan 48105
Telephone: (734) 930-5452
Facsimile: (734) 665-8788

Attorneys for Precision Medical, Inc., Precision
Orthopedics Midwest, Inc., Orthocala, ORS, Inc.,
Chris Nichols, Emmett Bonamarte, Cindy Bonamarte,
Kent Adams and Steve Tufts

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICAL SALES & CONSULTING GROUP, et al. | CASE NO. 08cv1595-BEN |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE DEFENSE TESTIMONY AT TRIAL THAT CONTRADICTS CERTAIN 30(b)(6) DEPOSITION TESTIMONY** |
| v. | |
| PLUS ORTHOPAEDICS USA, INC., et al. Defendants. | |

**TABLE OF CONTENTS**

**Page**

I.      FACTUAL BACKGROUND ........................................................................................... 1

        A.      Designees' Lack of Knowledge Regarding Change of Control Payment
                And Corporate Integrity Agreement ....................................................................... 2

        B.      30(b)(6) Deponents' Admissions ............................................................................. 6

II.     ARGUMENT ................................................................................................................... 8

III.    CONCLUSION ............................................................................................................. 11

1

2

## **TABLE OF AUTHORITIES**

3
**Page**

**Cases**

4

*Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Intern. Ltd.*,
5
    253 F.R.D. 524, 526 (C.D. Cal. 2008) ...................................................................................... 8

6
*Brazos River Authority v. GE Ionics, Inc.*
7
    469 F.3d 416, 433 (5th Cir. 2006) .................................................................................... 9, 10

*Federal Deposit Ins. Corp. v. Butcher*
8
    116 F.R.D. 196, 201 (E.D. Tenn 1986).................................................................................. 11

9
*Indiana Insurance Co. v. General Electric Co.*
    326 F.Supp.2d 844, 846 (N.D.Ohio 2004)............................................................................. 10
10
*McKesson Corp. v. Islamic Republic of Iran*
11
    185 F.R.D. 70, 79 (D.D.C. 1999) ......................................................................................... 10

*Resolution Trust Corp. v. S. Union*
12
    985 F.2d 196, 197 (5th Cir.1993)........................................................................................... 9

13
*U.S. v. Taylor*
    166 F.R.D. 356, 361, 362 (M.D. N.C. 1996) ........................................................... 9, 10, 11
14
*Wilson v. Lakner*
15
    228 F.R.D. 524, 530 (D. Md. 2005) ............................................................................ 9, 10, 11

16

**Rules and Statutes**
17

18
Fed. R. Civ. P. 30(b)(6)................................................................................................................ 8, 9
19
Fed. R. Evid. 804(b)(3) ................................................................................................................. 10
Fed. R. Civ. P. 26(e).................................................................................................................... 10
20
Fed. R. Civ. P. 37(b)(2).................................................................................................................. 10

21

22

23

24

25

26

27

28

Plaintiffs Chris Nichols and Precision Medical, Inc. ("Precision Medical"), Emmett and

Cindy Bonamarte and Precision Orthopedics Midwest, Inc. ("Bonamarte"), Steven Tufts and

ORS, Inc. ("ORS") (collectively "Plaintiffs") file this memorandum of points and authorities in

support of Plaintiffs' motion to exclude defense testimony at trial that contradicts certain 30(b)(6)

deposition testimony in which Defendants testified that Defendants had no knowledge or opinion

regarding specific sets of facts.

In support of this motion, Plaintiffs state as follows:

## I.    FACTUAL BACKGROUND

Through the course of discovery on June 23, 2009, Plaintiffs served on Defendants Smith

& Nephew, Inc. ("Smith & Nephew") and Plus Orthopedics USA, Inc. ("Plus") separate 30(b)(6)

Notices. *See* Ex. 1, Plaintiffs' 30(b)(6) Deposition Notice directed to Smith & Nephew ("Smith &

Nephew Notice"); *See* Ex. 2, Plaintiffs' 30(b)(6) Deposition Notice directed to Plus ("Plus

Notice"). After Defendants' refusal to designate a single 30(b)(6) witness, Plaintiffs filed a

Motion to Compel Defendants' 30(6)(6) Depositions. *See* Dkt. No. 34. Defendants filed a Motion

for Protective Order relating to Plaintiffs' 30(b)(6) notices. *See* Dkt. No. 36.

At the hearing on the parties' motions, Magistrate Judge Major stated unequivocally that

Defendants had an obligation to produce knowledgeable 30(b)(6) witnesses:

> THE COURT: All right. Counsel, I have reviewed all of the
> documents that were filed. And Mr. Katsell, I have to say, I'm sorry you're
> the one that's here on behalf of the Defendants instead of Mr. Dienelt. I
> have to tell you, I am so disappointed to see that after the conversation that
> I had with counsel on the phone, that you are still taking the position that
> you are not required to produce a 30(b)(6) witness on any subject. That's
> just plain wrong.
>     This case was filed by Plaintiffs in State Court. You chose to
> remove it to Federal Court. When you choose to remove it to Federal
> Court, Federal Rules apply. I'm shocked to think that any lawyer,
> especially a lawyer from DLA Piper is not aware that Federal Rules apply.
> Because Federal Rules apply, Rule 30(b)(6) applies. So I have to say, this
> entire motion in from of me is extremely disappointing.
>     If you had conceded that the Plaintiffs were entitled to ask - - to
> request 30(b)(6) depositions and had produced witnesses on some of the

1                                           CASE NO.  08CV1595-BEN (BLM)

1  topics, which you initially conceded were fine, and we were having any
   argument about - - or the two of you were having an argument about three
2  topics or four topics, that's a legitimate dispute.
        This motion in front of me is not legitimate. And the only thing that
3  saved you on this grounds is that they didn't ask for sanctions. Do you
   understand?

4
        * * * *
5
        THE COURT: . . . . So I'm granting their [Plaintiffs'] request. You
6  have to produce 30(b)(6) witnesses. There's just no two ways around that.

7  *See* Ex. 3, 9/4/09 Hearing Transcript at 1:14-2:13; 4:9-11.

8  Also at the hearing, and with regard to Plaintiffs' 30(b)(6) topic related to "[t]he Corporate

9  Integrity Agreement ('CIA') between Smith & Nephew and the Office of Inspector General of the

10 Department of Health and Human Services as it relates to any Plaintiff" (*See* Ex. 4 at No. 23), the

11
   Court ordered Defendants to designate a 30(b)(6) witness to testify about "does that corporate
12
13 integrity agreement apply to [Plaintiffs]. If it does, did [Smith & Nephew] comply with it. If it

14 doesn't, why [does Smith & Nephew] think it doesn't." *See* Ex. 5, 9/4/09 Hearing Transcript at

15 41:25-42:8.

16 Defendants eventually designated the following 30(b)(6) witnesses to testify as to certain

17 topics (*See* Ex. 6, which is a chart that summarizes each topic the specific designee testified to):

18
   Sean Cogan, who testified as Defendants on over 20 separate topics; Carolyn Shelton who
19
20 testified as Defendants regarding the product recalls; David Ware who testified as Defendants

21 regarding the products marketed and sold by Defendants and Plaintiffs' sales efforts; Tim

22 Frandsen who testified as Defendants as to the Galileo system and Defendants' development of a

23 surgical navigation system; and Austin Byrd who testified as Smith & Nephew regarding the

24 Corporate Integrity Agreement's application to Plaintiffs.

25      **A.    Designees' Lack Of Knowledge Regarding Change Of Control Payment And**
26             **Corporate Integrity Agreement.**

27      One of the topics described in both the Smith & Nephew Notice and the Plus

28
                                2                    CASE NO.  08CV1595-BEN (BLM)

1   Notice concerns the change of control clause in Plaintiff Bonamarte's Agreement and the

2   payment required pursuant to it. The change of control provision provides that any successor

3   company to Plus has the obligation to provide Bonamarte with a "comparable designation" or pay

4   "an amount equal to 150% of the total sales by Representative of Product in the Representative

5

6   Territory during the previous 12 months." *See* Ex. 7, Bonamarte Agreement at Exhibit D.

7       Specifically, the Notices described this topic as follows: "Determination or consideration

8   of whether to pay or not pay a change of control or buyout payment in connection with the

9   Precision Orthopedics Midwest, Inc. Agreement, as amended." *See* Ex. 8, Smith & Nephew

10   Notice at ¶ 17; *See* Ex. 9, Plus Notice at ¶ 17.

11      Defendants designated Sean Cogan, Smith & Nephew's Vice President of Finance for

12   Americas Commercial Team, to testify as Defendants related to this topic. *See* Ex. 10, portions of

13   Sean Cogan Deposition Transcript at 15:21-23, 19:9-18. At his deposition, Sean Cogan could

14   provide no factual information on behalf of Defendants related to the meaning of a comparable

15

16   designation.

17      Cogan testified as follows: "Q. So you have no opinion as to what constitutes a

18   comparable designation? A. Correct." *See* Ex. 11, Cogan Dep. 427:7-9; *See* Ex. 12, Cogan Dep.

19   at 426:23-427:6.  Cogan also testified that Defendants have no knowledge of what underlying

20   facts related to Smith & Nephew's decision not to make the change of control payment: "Q. So

21

22   you have no knowledge of the underlying facts that relate to the decision not to make the change

23   of control payment? A. Correct." *See* Ex. 13, Cogan Dep. at 412:1-4.

24      Cogan conceded his complete lack of knowledge regarding the underlying facts related to

25   Smith & Nephew's decision not to make the change of control payment in spite of acknowledging

26   that the Smith & Nephew business units conveyed such facts to Smith & Nephew's legal

27   department:

28

1    Q. Okay. But the legal department had to make that decision based on information
     that they got from the business units, right?

2

3    A. Information from business units and per the contract language.

4    Q. Okay. So my question is, what information was conveyed from a business
     standpoint to the legal department that caused - - apparently caused them to make
     the decision not to make - - not to have a change of control payment made to
5    Emmett Bonamarte[e]?

6    A. I'm not aware of the specific information that got communicated to the legal
     department for them to make that decision.

7

8    *See* Ex. 14, Cogan Dep. at 411:12-25. Accordingly, Defendants testified that they have no

9    knowledge regarding what factual information exists that the legal department relied upon in

10   deciding not to make the change of control payment pursuant to the Bonamarte Agreement.

11   Smith & Nephew designated Austin Byrd, Smith & Nephew's Senior Vice President of

12   Ethics and Compliance, to testify regarding topic 23 – the CIA and its application to Plaintiffs.

13

14   *See* Ex. 15, portions of Deposition of Austin Byrd at 6:12-18. Early in the deposition, counsel for

15   the parties confirmed that, as ordered by the Court, topic 23 included: "whether the Corporate

16   Integrity Agreement was binding on the plaintiffs. If it was, what training the plaintiffs received,

17   and if it's the position of Smith & Nephew that it wasn't binding on the plaintiffs, what the basis

18   for that position is." *See* Ex. 16, Byrd Dep. at 6:23-7:4.

19   Byrd, in spite of his title as Senior Vice President of Ethics and Compliance during the

20   time of Smith & Nephew's acquisition of Plus, testified that he had neither knowledge of whether

21

22   the CIA applies to Plaintiffs, nor knowledge of the factual basis for Smith & Nephew's failure to

23   treat Plaintiffs as "Covered Persons" pursuant to the CIA. *See* Ex. 17, Byrd Dep. at 7:25-8:5

24   (regarding Mr. Byrd's title and time in position from 2007 until 2010).  Mr. Byrd also admitted

25   that he did not engage in any meaningful preparation or education for his deposition as a

26   representative of Smith & Nephew.

27   Q. Did [the CIA] require specific training of the independent sales force?

28

4                       CASE NO.  08CV1595-BEN (BLM)

1     A. It required training for a group of people defined as covered persons. The definition of covered persons is in the CIA.

2

3     Q. What did - - is it - - do you have a - - do you believe that the plaintiffs in this lawsuit are covered persons under the CIA?

4     A. Honestly, I don't even know who the plaintiffs in this lawsuit are.

5     Q. What did you do to prepare for this deposition?

6     A. I spoke to my lawyers. I spoke to lawyers for the company. They're not my lawyers.

7     Q. Who did you speak to?

8     A. I spoke to Ginny Grau and Jean Mercer.

9     Q. Approximately how long did you speak to them for?

10     A. I didn't keep track of the time.

11     Q. That's why I asked approximately.

12     A. Less than an hour.

13     * * * *

14

15     Q. But that's not the - - my question is, are they covered persons under the CIA? You're saying if A, then yes, and if B, then no, but that doesn't answer my question, which is in your corporate designee [capacity], are they covered persons?

16

17     A. I don't know what the contractual status or non-contractual status of these plaintiffs were to the company.

18     Q. Okay. Then that's - - I just want to make sure so if, in fact, I'm correct when I say that you are not taking a position as to whether they're covered persons or not.

19

20     A. I stand by my answer that I've already given you.

21     Q. Which is that you're not taking a position?

22     A. Same response. Someone would have to tell me whether or not the plaintiffs were under a contract with Smith & Nephew or whether they are not under a contract.

23     * * * *

24

25     Q. If they had a contractual relationship with Smith & Nephew, then they were covered persons; is that correct?

26     A. If they were contractors, subcontractors, agents or other persons who on behalf of Smith & Nephew performed functions related to the sale or marketing of items or services reimbursable by federal healthcare programs, then pursuant to the applicable section in the definition of covered persons, I would consider them covered persons. But that, you know, that's the definition.

27

28

5

Q. But you aren't prepared, sitting here today, to make a conclusion?

A. Yeah, that is correct. What I'm telling you is, --

Q. Okay.

A. -- I don't know. I don't know, personally, what their status was.

Q. Just [to] make it clear, I'm not asking you personally what you know. I'm asking you as the corporate -- I just want to make the record clear. I'm asking you as the corporate designee. And as the corporate designee, you are not prepared to answer the question; is that correct?

A. That is correct. I do not -- I cannot -- I cannot, based on what I -- what I know, make that determination.

*See* Ex. 18, Byrd Dep. at 17:15-18:10, 58:5-24, 60:8-61:10.

Smith & Nephew admitted in its responses to written discovery that it did not offer any training or compliance classes related to the CIA to Plaintiffs.   *See* Ex. 19, Smith & Nephew Response to Interrogatory No. 60.

Mr. Byrd's lack of knowledge about whether Plaintiffs had contracts with Smith & Nephew after the acquisition highlights his lack of preparation to testify as a 30(b)(6) witness. Through the course of discovery, Smith & Nephew had already acknowledged that Plaintiffs' contracts became contracts with Smith & Nephew upon the acquisition. *See* Ex. 20, Cogan Dep. at 303:15-21 (Defendants agree that Plaintiffs' Contracts "remained in effect after the acquisition" and "became Smith & Nephew contracts").

Mr. Byrd simply had no information whatsoever regarding the topic described by the Court and to which Smith & Nephew was ordered to testify – "does that corporate integrity agreement apply to [Plaintiffs]. If it does, did [Smith & Nephew] comply with it. If it doesn't, why [does Smith & Nephew] think it doesn't."

**B.     30(b)(6) Deponents' Admissions.**

Throughout the course of the 30(b)(6) depositions, Defendants' designated deponents mentioned above made numerous factual admissions regarding many relevant key facts. A

sampling of these relevant factual admissions is:

- Smith & Nephew paid cash for the Plus business and purchased the assets of Plus. Smith & Nephew purchased the whole Plus business. (Cogan 399:24-400:12);

- At the point of the acquisition, Plaintiffs' Contracts became Smith & Nephew Contracts. (Cogan 303:15-21);

- Smith & Nephew solicited the services of a member of Precision Medical's sales force, Jeff Lenihan, to work for Smith & Nephew and offered Lenihan a contract to work for Smith & Nephew. (Cogan 389:23-392:12);

- Smith & Nephew did not provide any Plaintiff with access to any additional new product after Smith & Nephew acquired Plus. (Ware 87:7-18);

- Smith & Nephew did not engage in quota negotiations with Precision Medical or ORS because "Smith & Nephew policy is that sales quotas are not negotiated" (Cogan 281:3-16);

- Smith & Nephew distributors and sales representatives were given access to Plaintiffs' information, including customer, pricing, and sales information. (Cogan 357:10-25; Ware 37:16-38:2, 64:5-22, 100:9-103:14); and

- Smith & Nephew advised the United States Food and Drug Administration, which regulates such recalls, that a letter was sent to all surgeons who implanted recalled product informing them of the recall. (Carolyn Shelton 62:17-20). Smith & Nephew, however, "did not have any communication directly to the customers including the surgeons concerning either the first or the second recall." (Carolyn Shelton 60:12-16).

In spite of its own 30(b)(6) designees testifying as to these various relevant facts, Defendants' counsel has thus far indicated that they will not stipulate to any of these facts at trial.

CASE NO.  08CV1595-BEN (BLM)

## II.      ARGUMENT

Rule 30(b)(6) provides, in relevant part:

> In its notice or subpoena, a party may name as the deponent a . . . private corporation . . . and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.... The persons designated must testify about information known or reasonably available to the organization.

As stated in the Advisory Notes, the purpose of Rule 30(b)(6) is to "curb the 'bandying' by which officers or managing agents of a corporation are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." Fed. R. Civ. P. 30(b)(6) advisory committee's notes.

It is well settled law that in response to a Rule 30(b)(6) deposition notice, a corporate party, such as Smith & Nephew, must produce a fully prepared, educated designee who is able to testify on behalf of the corporation regarding all information reasonably available to the corporation, regardless of the designee's own personal knowledge:

> [W]ith regard to choosing a deponent to speak on behalf of the corporation, companies have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and *to prepare them to fully and unequivocally answer questions about the designated subject matter*. Notably, and because Rule 30(b)(6) explicitly requires a company to have persons testify on its behalf as to all matters reasonably available to it, . . . the Rule implicitly requires persons to review all matters known or reasonably available to [the corporation] in preparation for the [Rule] 30(b)(6) deposition. In other words, personal knowledge of the designated subject matter by the selected deponent is of no consequence.

*Bd. of Trustees of Leland Stanford Junior Univ. v. Tyco Intern. Ltd.*, 253 F.R.D. 524, 526 (C.D. Cal. 2008) (internal quotations, italics, and citations omitted) (emphasis added). "[I]n a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation." *Id.* (internal citations and quotations omitted). Thus, a Rule 30(b)(6) designee does not give his or her personal opinions, but presents the corporation's "position" on the topic. *U.S. v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C. 1996). "When a corporation produces an employee

8

pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. *This extends not only to facts, but also to subjective beliefs and opinions.*" *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (citations omitted) (emphasis added); *see also Resolution Trust Corp. v. S. Union,* 985 F.2d 196, 197 (5th Cir.1993) ("When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent.").

Moreover, a party "does not fulfill its obligations at the Rule 30(b)(6) deposition by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available, and then at trial argue a different position." *Taylor*, 166 F.R.D. at 362. Nor does the party have the "right to deny knowledge or position now [at the deposition], but then at trial to rely on the documents and testimony of others or to at least present argument that the evidence presented by others does not reflect the state of facts as contended by those parties." *Id.* "If a corporation has knowledge or a position as to a set of alleged facts or an area of inquiry, it is its officers, employees, agents or others who must present the position, give reasons for the position, and, more importantly, stand subject to cross-examination. A party's trial attorney does not fit that bill." *Id.* "Therefore, if a party states it has no knowledge or position as to a set of alleged facts or area of inquiry at a Rule 30(b)(6) deposition, it cannot argue for a contrary position at trial without introducing evidence explaining the reasons for the change. [Citation]. Otherwise, it is the attorney who is giving evidence, not the party." *Id.* at 362-63 (citing *Ierardi v. Lorillard, Inc.*, 1991 WL 158911, at *3 (E.D. Pa.)); *see also Wilson v. Lakner*, 228 F.R.D. 524, 530 (D. Md. 2005) ("Additionally, depending on the nature and extent of the obfuscation, the testimony given by the non-responsive deponent (e.g., 'I don't know') may be deemed 'binding on the corporation' so as to prohibit it from offering contrary evidence at trial.").

Here, as described above, Cogan admitted to not having the requisite knowledge to testify regarding Smith & Nephew's decisions not to make the change of control payment to Bonamarte and could provide no information regarding the underlying factual information that was provided to the Smith & Nephew's legal department regarding whether Bonamarte was entitled to the change of control payment. Likewise, Byrd had no knowledge whatsoever regarding whether Smith & Nephew considered Plaintiffs to be "covered persons" under the CIA. Indeed, Byrd did not even know that Plaintiffs had contracts with Smith & Nephew. Accordingly, because of Cogan and Byrd's lack of knowledge and preparation, Plaintiffs request that Defendants be prohibited from arguing for a position different from the testimony of Cogan and Byrd at trial. *Wilson*, 228 F.R.D. at 530.

As for the numerous other 30(b)(6) factual admissions, "[t]he designee, in essence, represents the corporation just as an individual represents him or herself at a deposition." *Taylor*, 166 F.R.D. at 361. The designee's statements are therefore "admissible as an admission." *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 79 (D.D.C. 1999); *Taylor*, 166 F.R.D. at 362 n. 6 (30(b)(6) designees "can make admissions against interest under Fed. R. Evid. 804(b)(3) which are binding on the corporation.").

The purpose of a motion in limine is to permit the Court to decide evidentiary issues in advance of trial in order to ensure an evenhanded and expeditious trial. *See Indiana Insurance Co. v. General Electric Co.,* 326 F.Supp.2d 844, 846 (N.D.Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Services,* 115 F.3d 436, 440 (7th Cir.1997)).

Here, Defendants have given no indication that any evidence exists to contradict any of the designees' factual admissions, which the Court compelled Defendants to provide pursuant to Court order. *See* Fed. R. Civ. P. 26(e) (party is under a continuing obligation to supplement their disclosures and discovery responses); Fed. R. Civ. P. 37(b)(2) (upon finding that a party failed to

10

1   comply with discovery obligations, a court is allowed to impose a wide variety of sanctions

2   including prohibiting "that party from introducing designated matters into evidence").

3   Defendants, therefore, should not be allowed to "sandbag" Plaintiffs by "conducting a half-

4   hearted inquiry before the deposition but a thorough and vigorous one before trial," which results

5
    in Plaintiffs learning of contradictory evidence for the first time at trial. *Taylor*, 166 F.R.D. at
6
7   362. The whole purpose of discovery is "to avoid 'trial by ambush.'" *Federal Deposit Ins. Corp.*

8   *v. Butcher*, 116 F.R.D. 196, 201 (E.D. Tenn 1986).

9   **III.    CONCLUSION**

10          For the aforementioned reasons, Plaintiffs respectfully request that the Court prohibit

11   Defendants from introducing evidence at trial that contradicts Sean Cogan's testimony that Smith

12   & Nephew (a) has no opinion as to what constitutes a "comparable designation" and (b) no
13
14   knowledge of the underlying facts upon which Smith & Nephew based its decision not to make

15   the change of control payment to Bonamarte; and further exclude any evidence that contradicts

16   Austin Byrd's testimony that Smith & Nephew has no knowledge regarding whether the

17   Corporate Integrity Agreement applies to Plaintiffs and the reasons for why it does or does not so

18   apply. Plaintiffs also request that Defendants be precluded from offering evidence at trial that
19
20   contradicts the factual admissions of Defendants' 30(b)(6) designees, which the Court in fact had

21   to order Defendants to designate and produce.  Alternatively, Defendants should be required to

22   show good cause as to why any testimony or evidence that Defendants wish to offer at trial was

23   not disclosed in discovery.

24

25

26

27

28

1    Dated:  April 11, 2011                    Respectfully submitted,

2

3                                              KRAMER & KRAMER, LLP

4

5                                       BY:  /s/ Mitchell A. Kramer
                                             Mitchell A. Kramer
6                                            1077 Rydal Road, Suite 100
                                             Rydal, PA  19046
7                                            (215) 887-9030
                                             (215) 887-9240 fax
8                                            mkramer@kramerandkramer.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            12                 CASE NO.  08CV1595-BEN (BLM)

1

## PROOF OF SERVICE

2

3

4

5

    I, Mitchell A. Kramer, hereby certify and declare that on April 11, 2011, I served
Plaintiffs' Motion in Limine and Memorandum of Points and Authorities in Support of Motion in
Limine to Exclude Defense Testimony at Trial that Contradicts Certain 30(b)(6) Deposition
Testimony by electronically filing the documents listed above with the Clerk of the Court and
served on the parties to this action listed below using the CM/ECF system:

6

7

8

                        Noah A. Katsell
                        DLA Piper US LLP
                        401 B Street, Suite 1700
                        San Diego, CA 92101
                        Noah.katsell@dlapiper.com

9

10

11

12

                        John F. Dienelt
                        DLA Piper US LLP
                        500 8th Street
                        Washington, DC 20004
                        John.dienelt@dlapiper.com

13

14

    I declare under penalty of perjury, on April 11, 2011, in Rydal, Pennsylvania that the
above is true and correct.

15

16

                        /s/ Mitchell A. Kramer
                        Mitchell A. Kramer

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO.  08CV1595-BEN (BLM)