UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICAL SALES & CONSULTING GROUP; et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　vs.<br><br>PLUS ORTHOPEDICS USA, INC.; SMITH & NEPHEW, INC.,<br><br>　　　　　　　　　　Defendants. | CASE NO. 08cv1595 BEN (BGS)<br><br>**ORDER ON THE PARTIES' MOTIONS IN LIMINE**<br><br>[Doc. Nos. 115-122] |

The parties' motions in limine are before the Court. Plaintiffs have filed three motions in limine. (Doc. Nos. 115-117.) Defendants have filed five motions in limine. (Doc. Nos. 118-122.) The Court orders as follows:

**I.　Plaintiffs' Motions in Limine**

　**A.　Plaintiff's Motion in Limine to Exclude Robert H. Wallace's Testimony Regarding Industry Standards**

Plaintiffs move to exclude the testimony of Robert H. Wallace regarding the industry standards and practices relevant to the orthopedic medical device industry and the operations of the sales force in the industry. Defendants argue in opposition that Wallace is qualified to testify on damages and his reliance on discovery and reliable information on the industry is appropriate.

///

Federal Rule of Evidence 702 allows expert testimony if certain conditions are met, including that the witness be "qualified as an expert by knowledge, skill, experience, training, or education." Wallace was retained to render an opinion about the amount of economic damages incurred by the plaintiffs if they prevail on their claims. He is a certified public accountant with experience in calculating economic damages. He has no experience with standards and practices in the orthopedic medical device industry and Defendants admit that Wallace will not be offering expert testimony on the orthopedic medical device industry. However, some of Wallace's testimony relies on information about the industry for purposes of context and information resulting from discovery.

Plaintiffs' motion is **GRANTED in part and DENIED in part**. The Court excludes any expert testimony from Wallace about orthopedic medical device industry standards or practices, including opinions about compliance with Plaintiffs' sales contracts or advisable industry practices. But, the Court will allow Wallace to testify about his damages calculations and, as necessary, the basis for those calculations. To the extent Wallace's testimony extends beyond that necessary for the calculation of economic damages and the basis for them, Plaintiffs may raise the issue during the bench trial.

**B.  Plaintiffs' Motion in Limine to Exclude Testimony or Other Evidence Relating to the Deferred Prosecution Agreement**

Plaintiffs move to exclude any testimony or other evidence regarding Smith and Nephew's Deferred Prosecution Agreement ("DPA") with the United States Attorney's Office for the District of New Jersey. Defendants intend to argue at trial that the expiration of the DPA reflects Smith & Nephew's compliance with training requirements, rebutting Plaintiffs' claim that Defendants failed to provide appropriate training.[1]

Defendants refused to provide any discovery related to the DPA. When Plaintiffs sought to compel discovery concerning the DPA, Defendants sought and obtained a finding from the Court

---

[1] The Court notes that Defendants' own motion in limine, discussed below, seeks to exclude the DPA, along with another agreement.

that the DPA was irrelevant.  Having refused to provide discovery related to the DPA and successfully advanced the position that it was irrelevant, Defendants cannot now rely on it.

Plaintiffs' motion is **GRANTED**.  Any testimony or other evidence regarding the DPA is excluded.

### C. Plaintiffs' Motion in Limine to Exclude Defense Testimony that Contradicts Certain Rule 30(b)(6) Deposition Testimony

Plaintiffs move to exclude any defense testimony that contradicts certain Federal Rule of Civil Procedure 30(b)(6)[2] deposition testimony, including that given by unprepared and unknowledgeable Rule 30(b)(6) designees.  Plaintiffs argue that Defendants should not be allowed to offer unknowledgeable and unprepared Rule 30(b)(6) witnesses that lacked knowledge of any facts underlying Smith & Nephew's decisions with regard to Plaintiffs and then "ambush" Plaintiffs with contrary testimony at trial.  Plaintiffs also move to exclude any evidence at trial that contradicts certain factual admissions of Defendants' Rule 30(b)(6) designees.  Defendants argue in opposition that the witnesses testified truthfully to their lack of knowledge in response to particular questions.

The parties do not dispute that Defendants cannot offer testimony that contradicts the testimony of its Rule 30(b)(6) witnesses, but disagree about the witnesses underlying testimony. Plaintiffs argue the witnesses were unprepared and lacked any knowledge concerning Smith & Nephew's positions, emphasizing certain portions of deposition testimony, and Defendants argue the witnesses testified truthfully to Smith & Nephew's positions, emphasizing other portions of witnesses' deposition testimony.  Plaintiffs also list a number of admissions by Rule 30(b)(6) witnesses.  What the Court lacks, as it must at this point, is contradictory trial testimony to compare with the witnesses deposition testimony.

///

---

[2] A Rule 30(b)(6) deposition, "often referred to as 'person most knowledgeable' or 'persons most qualified' depositions, . . . is directed at the entity itself," obligating the entity to "produce the most qualified person or persons to testify on its behalf." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 798 n.4 (9th Cir. 2003).

Accordingly, Plaintiffs' motion is **DENIED**. Plaintiffs may raise the issue at trial if Defendants attempt to offer testimony that contradicts its Rule 30(b)(6) witnesses testimony and admissions.[3]

## II. Defendants' Motions in Limine

### A. Defendants' Motion in Limine to Exclude Testimony Regarding the DPA, Corporate Integrity Agreement, or Settlement Agreement with the Department of Justice

Defendants move to exclude any evidence or testimony concerning the DPA, Corporate Integrity Agreement ("CIA"), or Defendants' settlement with the Department of Justice. Defendants argue that because Plaintiffs were not parties to any of the agreements or beneficiaries of the agreements, the agreements are irrelevant and unduly prejudicial. Plaintiffs argue that Defendants' lack of compliance with the CIA is relevant to Plaintiffs' claim that Defendants failed to provide training necessary for Plaintiffs to perform under their contracts.

As explained above, the DPA is excluded. The Court need only consider whether the CIA Smith & Nephew entered into with the Office of Inspector General of the Department of Health and Human Services should be admitted. The CIA governs certain conduct by Smith & Nephew and requires training for "covered persons." Covered persons include "all contractors, subcontractors, agents, and other persons who, on behalf of Smith & Nephew, perform functions related to the sale or marketing of items or services reimbursable by Federal health care programs." Plaintiffs claim that they are covered persons that Smith & Nephew was required to train under the CIA, but Smith & Nephew did not train Plaintiffs. Defendants accurately note that Plaintiffs do not have a claim for breach of the CIA because Plaintiffs were not parties to the agreement.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Plaintiffs argue that the CIA is relevant because it is evidence that Smith & Nephew marginalized them and frustrated their ability to sell

---

[3] As the Court noted at the parties' first Final Pretrial Conference, the Court encourages the parties to stipulate to as many facts as possible prior to trial.

product under their contracts with Smith & Nephew. The CIA itself does not tend to show that Defendants frustrated Plaintiffs ability to sell under their contracts. But, if Plaintiffs establish that they should have been trained under the terms of the CIA, it suggests that Defendants did not train Plaintiffs when they were obligated to under an agreement with the government. That might suggest Defendants were trying to frustrate Plaintiffs' ability to sell under their contracts.

Because the evidence is minimally relevant, the Court must consider whether "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. Because this is a bench trial, there is much less likelihood the evidence will be unfairly prejudicial or confuse the issues, and it certainly will not mislead the jury. And the Court can minimize the potential unfair prejudice from the CIA by excluding any evidence about the circumstances leading to it, which are not relevant to this case. However, the Court cautions Plaintiffs to minimize the time spent establishing Plaintiffs were covered persons under the CIA or run the risk of having it excluded entirely as a waste of time.

Defendants' motion is **GRANTED in part and DENIED in part**. Plaintiffs may present evidence concerning the CIA, but are precluded from presenting any evidence concerning the circumstances or settlement leading to it. The DPA is excluded.

**B.  Defendants' Motion in Limine to Preclude Plaintiffs from Seeking Damages Not Causally Linked to Alleged Breaches of Contract or Allocated Among Alleged Breaches**

Defendants move to preclude Plaintiffs from seeking relief for damages not specifically linked to particular breaches of the contract. Plaintiffs argue in opposition that Plaintiffs have calculated their damages based on the past volume of their businesses and other data relevant to probable future sales.

Defendants argue that Plaintiffs have failed to set out damages by each particular breach by Defendants. As Defendants acknowledge, Plaintiffs have identified evidence of a number of different failures by Defendants that have collectively harmed Plaintiffs. Defendants argue that Plaintiffs must parse out the damages among each individual breach, but Defendants fail to cite any

authority requiring Plaintiffs to calculate damages by each individual breach. The Court does, however, agree that Plaintiffs must prove their damages at trial with reasonable certainty. If the Court finds Defendants breached their obligations to Plaintiffs on a particular basis, but not on another, the Court will only award damages that Plaintiffs have proven flowed from the basis proven. Defendants' motion is **DENIED**.

      **C.    Defendants' Motion in Limine to Preclude Argument, Discussion, or Testimony Concerning Conduct Allegedly in Breach of the Implied Duty of Good Faith and Fair Dealing that is Consistent With or Unrelated to Specific Contract Provisions**

Defendants move to exclude any evidence regarding the implied covenant of good faith and fair dealing that is not specifically provided for in the contracts or "hinged" to an express term. Plaintiffs argue in opposition that the covenant of good faith and fair dealing prohibits any conduct that frustrates a party's right to the benefits of the contract. While presented as a motion in limine, the motion boils down to Defendants' assertion that Plaintiffs cannot prove a violation of the covenant of good faith and fair dealing because the violations Plaintiffs identify were not expressly prohibited in the contracts. As discussed below, the covenant is not that limited.

"In addition to the duties imposed on contracting parties by the express terms of their agreement, the law implies in every contract a covenant of good faith and fair dealing." *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979). Under the covenant, parties are prohibited from doing anything to interfere with performance of the contract and obligated "to do everything that the contact presupposes that he will do to accomplish its purpose." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093 (2nd Dist. 2004). The covenant prevents a party from "unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat'l. Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis in original).

While the covenant "cannot impose substantive duties or limitations on the contracting parties beyond those incorporated in the specific terms of their agreement," *Guz.* 24 Cal. 4th at 350, "breach of a specific provision of the contract is not a necessary prerequisite" for a violation of the covenant because the covenant would then serve no purpose. *Carma Developers v.*

*Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992).  It is "a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Love*, 221 Cal. App. 3d at 1153 (emphasis in original).  "The precise nature and extent of the duty imposed by such an implied promise will depend on the contractual purposes." *Egan*, 24 Cal. 3d at 818; *see also Foothill Props. v. Lyon/Copley Corona Assocs.*, 46 Cal. App. 4th 1542, 1551 (4th Dist. 1996).

Here, Plaintiffs had a contract with Defendants to sell Plus products and receive commissions in return.[4]  Plaintiffs claim that Defendants violated the covenant by failing to train Plaintiffs, advertise products, provide necessary inventory, communicate with surgeons about recalls, or provide basic sales information.  These are all matters Defendants admit were necessary to compete in the market and arguably necessary to accomplish the purpose of the contracts.  Additionally, Plaintiffs assert that Defendants mishandled product recalls, excluded Plaintiffs from meetings with their own customers, excluded Plaintiffs from meetings/trainings about legacy Plus products, denied Plaintiffs access to their own sales information, and disclosed Plaintiffs' confidential customer information to competitors.  Particularly in light of evidence suggesting Defendants were actively trying to get rid of Plaintiffs, this conduct could amount to interference with performance of the contract or a failure to do that which is necessary to accomplish the purpose of the contract.  *See Pasadena Live*, 114 Cal. App. 4th at 1093.  Accordingly, Defendants' motion is **DENIED**.

**D.     Defendants' Motion in Limine to Exclude Argument, Discussion, or Testimony Regarding Plaintiffs' Claims that They Were Entitled to Sell Smith & Nephew Products**

In ruling on Defendants' motions for summary judgment, the Court found that under the unambiguous terms of the contract, Plaintiffs only had the right to sell legacy Plus products, not

---

[4] In granting Defendants' motion for summary judgment, the Court found under the unambiguous terms of the contracts, Plaintiffs only had the right to sell *Plus products*, not Smith & Nephew products.  Accordingly, any violation of the covenant that Plaintiffs assert must necessarily have some connection to the sale of legacy Plus products, the purpose of the contract.  *See Egan*, 24 Cal. 3d at 818 (finding the duty imposed under the covenant depends on the contractual purposes).

Smith & Nephew products.[5]  Because the Court has already determined that Plaintiffs were not entitled to sell legacy Smith & Nephew products, Defendants' motion is **GRANTED**.  However, the Court is mindful that Smith & Nephew rebranded legacy Plus products as Smith & Nephew products after the acquisition.  Plaintiffs are not precluded from claiming a right to sell legacy Plus products rebranded as Smith & Nephew products.

### E. Defendants' Motion in Limine to Exclude Certain Testimony from Mark Distin for Lack of Personal Knowledge, As Inadmissible Hearsay, and for Lack of Expert Designation

Defendants challenge Mark Distin's testimony concerning Plaintiff Bonamarte's sale agreement as lacking personal knowledge, hearsay, and improper expert testimony.  Plaintiffs argue in opposition that he has personal knowledge of the negotiation of the agreement, the hearsay exception for an admission by a party opponent applies, and his testimony is admissible as lay opinion testimony under Federal Rule of Evidence 701.

Distin was Plus' former director of Sales, recruited Plaintiff Bonamarte as a sales representative for Plus, and was involved in the negotiations about the agreement between Bonamarte and Plus.  The relevant provision of that agreement provided that if Plus was acquired under certain terms the successor company would be obligated to provide Bonamarte with a comparable designation and if the successor did not, the company would pay Bonamarte 150% of his prior 12 months' sales.

While Distin was not personally responsible for drafting the agreement, his deposition testimony reflects that he was closely involved in negotiating the terms of the agreement and was familiar with this provision.  He has sufficient personal knowledge to offer relevant testimony concerning the agreement he helped negotiate on behalf of Plus.

///

///

---

[5] As Plaintiffs accurately note in opposition, Defendants' motions for summary judgment did not raise, and this Court did not rule on, Plaintiff Bonamarte's claim regarding the change in control provision or the right to sell Smith & Nephew products on that basis.  Accordingly, Plaintiff Bonamarte is not precluded from claiming a right to sell Smith & Nephew products, as it relates to the change in control provision in his contract.

1    Defendants' hearsay objection is based primarily on their incorrect assertion that Distin was
2 not part of the negotiations. However, as noted above, his deposition testimony reflects that he
3 was closely involved and familiar with the negotiations. Additionally, as Plaintiffs note in
4 opposition, any statements by Plus President and CEO David Lorenzi to Distin are admissions by a
5 party opponent and not hearsay under Federal Rule of Evidence 801(d)(2). The Court's conclusion
6 that Distin's testimony is generally not precluded as hearsay does not preclude Defendants from
7 making a proper objection at trial if Defendants believe it is hearsay.

8    Finally, Defendants challenge Distin's testimony concerning his opinion of the change in
9 control provision and the general use of this type of provision in the orthopedic medical device
10 industry. The Court agrees that Distin cannot provide *expert* testimony because he was not
11 disclosed as an expert as required by Federal Rule of Civil Procedure 26(a)(2). But, Plaintiffs
12 claim that Distin's testimony concerning the orthopedic medical device industry is not expert
13 testimony, but rather just facts that he has learned during thirty years in the industry appropriately
14 offered by a lay witness under Rule 701.

15    "Lay opinion testimony is admissible only to help the jury or the court to understand the
16 facts about which the witness is testifying and *not to provide specialized explanations or*
17 *interpretations that an untrained layman could not make in perceiving the same acts or events*."
18 *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (emphasis added). Rule 701(c) precludes
19 a lay witness from expressing an opinion based on specialized knowledge. Plaintiffs point to
20 language in Rule 701's advisory committee notes, suggesting that a witness can testify under Rule
21 701 if the witness has "particularized knowledge that the witness has by virtue of his or her
22 position in the business." FED. R. EVID. 702 advisory committee's note. However, this language is
23 not referring to testimony about general industry practice, *i.e.* the interpretation of or general use of
24 change in control provisions in the orthopedic supply industry. The language is explaining why a
25 business owner could testify about the profits of his particular business without qualifying as an
26 accountant, appraiser, or similar expert. *Id.* Because Distin's opinions about industry practices
27 based on his thirty years of experience in the industry are based on specialized knowledge, it is not
28 admissible as lay opinion testimony under Rule 701. Additionally, because Distin was not

1  disclosed as an expert, he cannot offer expert testimony.

2  Accordingly, Defendants' motion is **GRANTED in part and DENIED in part**. Distin

3  may testify about his knowledge of the negotiations leading to Plaintiff Bonamarte's agreement,

4  but may not offer any opinion testimony regarding general industry practices.

## CONCLUSION

Plaintiffs' motion to exclude Robert H. Wallace's testimony is **GRANTED in part and DENIED in part**. (Doc. No. 115.) Plaintiffs' motion to exclude the DPA is **GRANTED**. (Doc. No. 116.) Plaintiffs' motion to exclude evidence related to Rule 30(b)(6) witnesses is **DENIED**. (Doc. No. 117.) Defendants' motion to exclude the DPA and CIA is **GRANTED in part and DENIED in part**. (Doc. No. 118.) Defendants' motion concerning Plaintiffs' damages is **DENIED**. (Doc. No. 119.) Defendants' motion concerning the covenant of good faith and fair dealing is **DENIED**. (Doc. No. 120.) Defendants' motion concerning Plaintiffs' right to sell Smith & Nephew products is **GRANTED**. (Doc. No. 121.) Defendants motion to exclude the testimony of Mark Distin is **GRANTED in part and DENIED in part**. (Doc. No. 122.)

**IT IS SO ORDERED.**

DATED: May 18, 2011

Hon. Roger T. Benitez
United States District Judge